SOL GREENFARB, Appellant, *v.* R. S. K. REALTY COR-
PORATION, Respondent.

(Argued February 11, 1931; decided March 31, 1931.)

*Harris Jay Griston* and *Alexander Bicks* for appellant. The provisions as to the maintenance of the private sewers, contained in the agreements, constitute a covenant running with the land, and, therefore, an additional incumbrance, and a defect in the title. (*Morehouse v. Woodruff*, 218 N. Y. 494; *Denman v. Prince*, 40 Barb. 213; *Nye v. Hoyle*, 120 N. Y. 195; *Gould v. Partridge*, 52 App. Div. 870; *Witherbee v. Meyer*, 84 Hun, 146.) The provisions for the maintenance and repair of the private rights of way and sewers, in so far as they constituted a money charge or lien on the land, were neither restrictions nor easements, but constituted an additional incumbrance on the title, justifying title rejection. (*Israelsky v. Levine*, 215 App. Div. 94; *Trustees of Columbia College v. Lynch*, 70 N. Y. 440; *Nellis v. Munson*, 108 N. Y. 453; *Bull v. Burton*, 227 N. Y. 101; *Hendricks v. Stark*, 37 N. Y. 106; *O'Neil v. Van Tassel*, 137 N. Y. 297; *Maupai v. Jackson*, 139 App. Div. 524; *Hart v. Lyon*, 90 N. Y. 663; *Mott v. Oppenheimer*, 135 N. Y. 312; *Crawford v. Krollpfeiffer*, 195 N. Y. 185; *Corn v. Bass*, 43 App. Div. 53.)

*Edward S. Greenbaum, Morris L. Ernst, Alexander Lindey* and *Abraham J. Herrick* for respondent. The plaintiff contracted to purchase subject to restrictions and easements of record, and the agreement as to maintenance and repair comes within that category. (*Rider v. Smith*, 3 Term Rep. 766; *Pomfret v. Ricroft*, 1 Saund. 321; *Laurence v. Jenkins*, L. R. 8 Q. B. 274; *Bronson v. Coffin*, 108 Mass. 175; *Castner v. Riegel*, 54 N. J. L. 498; *Adams v. Van Alstyne*, 25 N. Y. 232; *Morehouse v. Woodruff*, 218 N. Y. 494; *Levy v. Schnurmacher*, 255 N. Y. 83;

*Bull* v. *Burton*, 227 N. Y. 101; *O' Neil* v. *Van Tassel*, 137 N. Y. 297; *Maupai* v. *Jackson*, 139 App. Div. 524; *Hart* v. *Lyon*, 90 N. Y. 663; *Mott* v. *Oppenheimer*, 135 N. Y. 312; *Cole* v. *Hughes*, 54 N. Y. 444; *Scott* v. *McMillan*, 76 N. Y. 141; *Crawford* v. *Krollpfeiffer*, 195 N. Y. 185; *Corn* v. *Bass*, 43 App. Div. 53.) The covenant to repair was a benefit to, not an incumbrance on the property. (*Bull* v. *Burton*, 227 N. Y. 101; *Levy* v. *Schnurmacher Constr. Corp.*, 255 N. Y. 83; *Lawrence Park* v. *Crichton*, 218 App. Div. 374.)

KELLOGG, J. The plaintiff entered into a contract in writing with the defendant, whereby the former agreed to purchase and the latter agreed to sell certain premises, " free from all encumbrances " except as stated in the contract. The contract specified certain mortgages and restrictive agreements to which the transfer was expressly made subject. It further provided that the transfer was to be " subject to restrictions and easements of record." On the law day the plaintiff refused to take title on the ground that the premises had been subjected to covenants, constituting incumbrances not specified in the contract, which were neither " restrictions " nor " easements." This action was subsequently instituted by the plaintiff to recover the down payment made.

The Edgemere Ocean Front Improvement Company, Inc., the defendant's predecessor in title, had been the owner of a rectangular tract of land, about one thousand feet long and two hundred feet wide, reaching from Bay avenue on the north to Ocean promenade on the south. The northern six hundred feet had been designated parcel B; the southern four hundred feet parcel A. The Edgemere Company sold all of parcel A to Kaplan and Miller. Contemporaneously, seller and buyer entered into written covenants, expressed to be binding upon their successors and assigns, and to constitute " covenants running with the land." The seller, the Edgemere Company, having

retained title to parcel B, covenanted to lay out through the center of that parcel a roadway, thirty feet wide, from the north line of parcel A, on the south, to Bay avenue on the north, and to maintain the road at its own cost and expense. It also covenanted to lay a sewer through the entire length of parcel B, giving to the owners of A the privilege of connecting therewith, each of the parties " agreeing to maintain in proper repair the sewer laid across the land owned by each respectively." Kaplan and Miller, the purchasers, on their side covenanted to lay out a private road, thirty feet wide, continuing the road on parcel B from the south line thereof through the center of parcel A to Ocean promenade, and thereafter to maintain the road. The contract contained this clause, " the rights of way to be laid out as aforesaid to be and forever remain for the common use of the parties hereto, their successors and assigns, the tenants' and occupants of parcels A and B." Thereafter the private road was laid out through parcels A and B, and termed Marvin street. Subsequently, the Edgemere Company conveyed to the defendant that lot of land in parcel B which the defendant contracted to sell to the plaintiff. The lot is bounded on the east by Marvin street, easements of passage in which are appurtenant to the lot. Do the covenants, entered into by the Edgemere Company and Kaplan and Miller, run with the land, to subject the lot in parcel B, which the plaintiff contracted to buy, to charges for the maintenance of the roadway and sewer pipe so far as they traverse the length of parcel B? If so, are the burdens imposed by the covenant either " restrictions " or " easements?"

It has been held that the burdens and benefits of covenants to maintain fences on boundary lines between railroad rights of way and lands adjoining run with the land. (*Blain* v. *Taylor*, 19 Abb. Pr. 228; *Moxley* v. *N. J. & N. Y. R. R. Co.*, 21 N. Y. Supp. 347; 143 N. Y.

649; *Satterly* v. *Erie R. R. Co.*, 113 App. Div. 462; *Corwin* v. *N. Y. & Erie R. R. Co.*, 13 N. Y. 42.) The same is true of covenants between farmers to maintain line fences (*Dey* v. *Prentice*, 90 Hun, 27; *Countryman* v. *Deck*, 13 Abb. N. C. 110); of covenants by a railroad to maintain overhead crossings over its right of way for the benefit of adjoining owners who granted the easements in part (*Aikin* v. *Albany, etc., R. R. Co.*, 26 Barb. 289; *Post* v. *West Shore R. R. Co.*, 123 N. Y. 580); of covenants between adjoining owners binding them to share equally the expense of repairing or rebuilding a party wall (*Mott* v. *Oppenheimer*, 135 N. Y. 312; *O' Neil* v. *Van Tassel*, 137 N. Y. 297). In *Holmes* v. *Buckley* (1 Eq. Cas. Abr. 27) it was held that the successors in title of one who had granted a watercourse across his premises to another, and had covenanted from time to time to cleanse the same, must cleanse it at the behest of those who succeeded to title in the watercourse. This court, in *Miller* v. *Clary* (210 N. Y. 127, 132), after stating the English rule to be that an affirmative or positive covenant does not run with the land, noted the exceptions to be " covenants to repair fences on boundary lines; to repair private ways, and covenants in leases." In a recent case this court considered the question whether covenants to maintain a private right of way ran with the land to bind abutting owners not parties to the covenant. (*Levy* v. *Schnurmacher Constr. Corp.*, 255 N. Y. 83, 86.) Although the covenant was held not to be binding upon the particular litigant, the court said, " such a covenant is a recognized exception to the general rule that covenants running with the land do not bind to the performance of affirmative acts."

No easement imposes upon the owner of a servient tenement other than a passive duty; an obligation to maintain a wall, a fence or a private road is not an easement. (Goddard, The Law of Easements, p. 24; Jones on Easements, § 822; Gale on Easements, p. 426; *Brill* v. *Brill*, 108

N. Y. 511.) An obligation imposed upon a servient owner " to do something for the benefit of the dominant tenement is not an easement, or, in other words, there can be no easement rendering it compulsory for the servient owner to do something." (Goddard, p. 23.) " I never heard of a servitude which had an obligation to repair." (Per Lopes, J., in *Stockport Highway Board* v. *Grant*, 46 Law Times Rep. 388.) " The grantor [of a way] is not bound to keep it in repair, if it be foundrous." (Comyn, Digest, Chimin, D-6; *Pomfret* v. *Ricroft*, 1 Saund. 320, 322.) Apart from express contract the owner of a servient tenement is not bound to execute any repairs to insure its enjoyment. (Gale, *supra*, p. 426.) " But special circumstances may impose upon him the duty to repair." (Halsbury, Laws of Eng., vol. 11, p. 237.) " Apt words " may bind him. (*Levy* v. *Schnurmacher Constr. Corp.*, *supra*.)

That a covenant to repair a right of way, which runs with the land, is not strictly an easement clearly appears from the foregoing authorities. Nevertheless, that such a covenant relates to and concerns an easement is no less clear. Indeed, in such a situation as we have in this instance, the covenant may seem so incidental and requisite to the easement that a purchaser warned by his contract of the latter might be deemed to have been fully advised of the former. We have here a private park one thousand feet long by two hundred feet wide; a roadway laid out lengthwise through its center; a subdivision of the park into small lots to which there would be no access except by the private road; a reference to a recorded grant of an easement, presumably giving legal status to a right of way, of which the laid out roadway was an outward and visible sign. Aware of these matters, a prospective purchaser might well reflect that, when all the lots were sold, none but lot owners would remain to repair and maintain the roadway; that lot owners must necessarily provide for its upkeep; that the burden of

making repairs could not be more equitably distributed than through a requirement that each lot owner should maintain that part of the roadway which marked the frontage of his particular lot. Is it not, then, a reasonable interpretation of the phrase " subject to restrictions and easements of record," contained in the contract of sale to the plaintiff, that the conveyance agreed upon was subordinated not only to easements of record, but to such covenants in aid of easements and incidental thereto as the records might disclose? Under the circumstances known to the plaintiff did not the phrase convey this meaning to his mind? We think that these questions must be answered in the affirmative, and that the plaintiff contracted to take subject to the incumbrances of such covenants. In *Blanck* v. *Sadlier* (153 N. Y. 551, 555, 558) there will be found a decision upon an analogous state of facts which reasonably justifies the holding now to be made. There a purchaser of real estate contracted to buy " subject to a mortgage of $16,000, to be at five per cent, three years to run." The purchaser sought rescission because the records, subsequently examined, disclosed that the mortgage, to which the purchase was subject, contained a provision for its payment " in gold coin of the United States of America of the present standard of weight and fineness." It was held that rescission might not be had although the purchaser had not been made aware of the particular provision as to payment; that special clauses such as this were quite frequently found in mortgages; that the particular clause was " an incident connected with an incumbrance on the property " which might well have been apprehended; that it did not appear that the purchaser would not have bought had he known of the provision; that the value of the property was not seriously affected thereby. The same thing may be said here, that the purchaser, agreeing to buy subject to an easement, contracted to take subject to an " incident " of that incumbrance, viz., a covenant

to repair, the imposition of which was obviously called for by the physical situation of the properties.

The judgment should be affirmed, with costs. (See 256 N. Y. 678.)

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.